1
2
3
4
5
6
7

# UNITED STATES DISTRICT COURT

8

## EASTERN DISTRICT OF CALIFORNIA

9
10 | BRUCE PATRICK HANEY,

CASE No.      1:12-cv-00650-LJO-MJS (PC)

11

ORDER DISMISSING COMPLAINT WITH
LEAVE TO AMEND

Plaintiff,

12
13

(ECF No. 1)

v.

14

AMENDED COMPLAINT DUE WITHIN
THIRTY (30) DAYS

15 | D. CASTILLO, et al.,
16

Defendants.

17 | _____/

18
19
20

**FIRST SCREENING ORDER**

21 | **I.      PROCEDURAL HISTORY**

22

Plaintiff Bruce Patrick Haney is a former state prisoner proceeding pro se and in

23

forma pauperis in this civil rights action filed on April 24, 2012 pursuant to 42 U.S.C. §

24

1983. The Complaint is now before the Court for screening.

25
26 | ///////
27

-1-

## II.    SCREENING REQUIREMENT

The Court is required to screen complaints brought by prisoners seeking relief against a governmental entity or officer or employee of a governmental entity. 28 U.S.C. § 1915A(a). The Court must dismiss a complaint or portion thereof if the prisoner has raised claims that are legally "frivolous, malicious," or that fail to state a claim upon which relief may be granted, or that seek monetary relief from a defendant who is immune from such relief. 28 U.S.C. § 1915A(b)(1),(2). "Notwithstanding any filing fee, or any portion thereof, that may have been paid, the court shall dismiss the case at any time if the court determines that . . . the action or appeal . . . fails to state a claim upon which relief may be granted." 28 U.S.C. § 1915(e)(2)(B)(ii).

Section 1983 "provides a cause of action for the 'deprivation of any rights, privileges, or immunities secured by the Constitution and laws' of the United States." Wilder v. Virginia Hosp. Ass'n, 496 U.S. 498, 508 (1990) (quoting 42 U.S.C. § 1983). Section 1983 is not itself a source of substantive rights, but merely provides a method for vindicating federal rights conferred elsewhere. Graham v. Connor, 490 U.S. 386, 393–94 (1989).

## III.    SUMMARY OF COMPLAINT

Plaintiff alleges his  First, Eighth and Fourteenth Amendment rights were violated while he was incarcerated at Corcoran State Prison ("CSP").  His claims are summarized as follows:

In February 2009, Plaintiff filed an excessive force lawsuit against Defendant

Castillo who exhibited a pattern and practice of using excessive force against inmates.[1] (Compl. at 4, 7-8.)

On March 30, 2011, Defendant Castillo took from Plaintiff legal documents relating to the 2009 lawsuit, cuffed him and, along with Defendant Taber, threw him to the ground causing an unspecified shoulder injury and minor scratches. (Id. at 3, 5-6.)

Defendant Nurse Ballesteros evaluated Plaintiff after this use of force and though Plaintiff told her of his injuries, she complied with custody staff requests by neither completely checking for injuries nor documenting all injuries in the medical chart. (Id. at 6.)

Defendant Castillo falsely charged Plaintiff with battery on an officer in the March 30th incident (Id. at 4-5) and conspired with Defendants Taber, Nadal, Munoz and Mathews to falsely find him guilty and place him in administrative segregation. (Id. at 5-8.) Castillo then conspired with Defendants Gonzales (Ad-Seg Legal Officer) and Law Librarian Guzman to deny and delay law library services, causing Plaintiff to miss a court deadline in the 2009 lawsuit and interfering with his appeal from dismissal of that lawsuit. (Id. at 8-9.)

Warden Gipson was aware of the 2009 lawsuit and Defendant Castillo's history of excessive force complaints and dangerous propensities against inmates and failed to discipline Castillo, thereby increasing the risk to inmates. (Id. at 7-8.)

In April of 2011, Plaintiff wrote Defendant Riches, counsel for Castillo in the 2009 lawsuit, advising him of the foregoing and requesting copies of the legal documents

---

[1] It appears the 2009 lawsuit was a civil action filed in Kings County Superior Court. (Compl. at 38.)

1  taken from him. (Id. at 6.) Riches conspired with Castillo to not respond and deny

2  Plaintiff access to court. (Id.)

3       In October of 2011, Plaintiff filed in Kings County Superior Court a tort complaint

4  against corrections staff at CSP. As part of a pattern of interfering with inmate legal

5  documents the Superior Court has failed to provide Plaintiff a conformed copy of the

6  
7  complaint for service and thereby denied him access to court. (Id. at 9.)

8       Plaintiff names as Defendants (1) D. Castillo, CSP Correctional Officer, (2) A.

9  Nadal, CSP Correctional Sergeant, (3) Munoz, CSP Correctional Lieutenant, (4) S.W.

10 Taber, CSP Correctional Sergeant, (5) M. Ballesteros, CSP Nurse, (6) Gipson, CSP

11 Warden, (7) D. Mathews, CSP Correctional Lieutenant, (8) J. Gonzales, CSP

12 
13 Correctional Officer, (9) J. Guzman, CSP Law Librarian, (10) John Riches, Deputy

14 Attorney General, (11) J. Matteson, Deputy Court Administrator, Kings County Superior

15 Court, (12) J. Lewis, Chief Deputy Clerk, Kings County Superior Court, (13) T. Barton,

16 Clerk Hanford Superior Court. (Id. at 2-3.)

17      He seeks monetary compensation. (Id. at 3.)

18 **IV.   ANALYSIS**

19      **A.   Pleading Requirements Generally**

20 
21      To state a claim under § 1983, a plaintiff must allege two essential elements: (1)

22 that a right secured by the Constitution or laws of the United States was violated and (2)

23 that the alleged violation was committed by a person acting under the color of state law.

24 West v. Atkins, 487 U.S. 42, 48 (1988); Ketchum v. Alameda Cnty., 811 F.2d 1243, 1245

25 (9th Cir. 1987).

26 
27      A complaint must contain "a short and plain statement of the claim showing that

the pleader is entitled to relief . . . ." Fed. R. Civ. P. 8(a)(2). Detailed factual allegations are not required, but "[t]hreadbare recitals of the elements of a cause of action, supported by mere conclusory statements, do not suffice." Ashcroft v. Iqbal, 556 U.S. 662, 678 (2009), citing Bell Atlantic Corp. v. Twombly, 550 U.S. 544, 555 (2007). Plaintiff must set forth "sufficient factual matter, accepted as true, to 'state a claim that is plausible on its face.'" Id. Facial plausibility demands more than the mere possibility that a defendant committed misconduct and, while factual allegations are accepted as true, legal conclusions are not. Id. at 667-68.

## B.   Personal Participation

To state a claim under § 1983, Plaintiff must demonstrate that each individually named defendant personally participated in the deprivation of his rights. Jones v. Williams, 297 F.3d 930, 934 (9th Cir. 2002). The Supreme Court has emphasized that the term "supervisory liability," loosely and commonly used by both courts and litigants alike, is a misnomer. Iqbal, 556 U.S. at 677. Plaintiff must demonstrate that each defendant, through his or her own individual actions, violated Plaintiff's constitutional rights. Id. at 675-78.

Defendants can not be held liable under § 1983 solely because of their supervisory capacity. There is no respondeat superior liability under [§] 1983." Taylor v. List, 880 F.2d 1040, 1045 (9th Cir. 1989). "Liability under [§] 1983 arises only upon a showing of personal participation by the defendant. A supervisor is only liable for the constitutional violations of . . . subordinates if the supervisor participated in or directed the violations, or knew of the violations and failed to act to prevent them. See Redman v. County of San Diego, 942 F.2d 1435, 1446-47 (9th Cir. 1991) (concluding that knowledge

of a policy and practice of overcrowding that allegedly resulted in inmate's rape could be sufficient to establish liability). "A showing that a supervisor acted, or failed to act, in a manner that was deliberately indifferent to an inmate's Eighth Amendment rights is sufficient to demonstrate the involvement—and the liability—of that supervisor." Starr v. Baca, 652 F.2d 1202, 1206-07 (9th Cir. 2011). "[A] plaintiff may state a claim against a supervisor for deliberate indifference based upon the supervisor's knowledge of and acquiescence in unconstitutional conduct by his or her subordinates. Id.

Plaintiff alleges that Defendant Warden Gipson failed to properly supervise. However, nothing before the Court suggests Defendant Gipson participated in or directed the alleged violations, knew of an excessive risk of such violations and then failed to act to prevent them, or was aware of a policy or practice that resulted in these  violations. General allegations that Defendant Castillo had numerous excessive force complaints against him, without more, are not sufficient to show a knowing failure to act.

Plaintiff also fails to allege facts personally linking Defendants Matteson, Lewis, and Barton to the alleged rights violations. Although  these Defendants may have held supervisory state court positions, that alone is insufficient under the above standards to show personal participation.

Plaintiff may not proceed against Defendants Gipson, Matteson, Lewis and Barton unless he alleges facts plausibly claiming each *personally* violated, or knowingly directed a violation of, or knew of and failed to act to prevent a violation of, or was deliberately indifferent to an excessive risk of violation of his constitutional rights.

///////

///////

1
2
3
4
5
6
7
8
9
10
11
12
13
14
15
16
17
18
19
20
21
22
23
24
25
26
27

**C.**   **Eighth Amendment**

1.   Excessive Force

Plaintiff alleges Defendants Castillo and Taber cuffed him and threw him to the ground injuring his right shoulder and causing numerous other minor injuries.

The Cruel and Unusual Punishments Clause of the Eighth Amendment protects prisoners from the use of excessive physical force. Wilkins v. Gaddy, ——U.S. ——, ——, 130 S.Ct. 1175, 1178 (2010); Hudson v. McMillian, 503 U.S. 1, 8-9 (1992). The analysis of an excessive force claim brought pursuant to § 1983 begins with "identifying the specific constitutional right allegedly infringed by the challenged application of force." Graham, 490 U.S. at 394. The Eighth Amendment's prohibition on cruel and unusual punishments applies to incarcerated individuals, such as Plaintiff. Whitley v. Albers, 475 U.S. 312, 318 (1976). To state an Eighth Amendment claim, a plaintiff must allege that the use of force was an "unnecessary and wanton infliction of pain." Jeffers v. Gomez, 267 F.3d 895, 910 (9th Cir. 2001). The malicious and sadistic use of force to cause harm always violates contemporary standards of decency, regardless of whether or not significant injury is evident. Hudson, 503 U.S. at 9; see also Oliver v. Keller, 289 F.3d 623, 628 (9th Cir. 2002) (Eighth Amendment excessive force standard examines de minimis uses of force, not de minimis injuries). However, not "every malevolent touch by a prison guard gives rise to a federal cause of action." Hudson, 503 U.S. at 9. "The Eighth Amendment's prohibition of cruel and unusual punishments necessarily excludes from constitutional recognition de minimis uses of physical force, provided that the use of force is not of a sort repugnant to the conscience of mankind." Id. at 9–10.

The court must be deferential when reviewing the necessity of using force

-7-

because the use of force relates to the prison official's legitimate interest in maintaining security and order. See Whitley, 475 U.S. at 321–22; see also Norwood v. Vance, 591 F.3d 1062, 1066-67 (9th Cir. 2010).

Whether force used by prison officials was excessive is determined by inquiring if the "force was applied in a good-faith effort to maintain or restore discipline, or maliciously and sadistically to cause harm." Id. at 6–7. The Court must look at the need for application of force; the relationship between that need and the amount of force applied; the extent of the injury inflicted; the extent of the threat to the safety of staff and inmates as reasonably perceived by prison officials; and any efforts made to temper the severity of the response. Whitley, 475 U.S. at 321. The absence of significant injury alone is not dispositive of a claim of excessive force. Wilkens, 130 S.Ct. at 1176-77; see also Felix v. McCarthy, 939 F.2d 699, 702 (9th Cir. 1991) (unprovoked and unjustified attack on prisoner violates constitution regardless of degree of injury).

Although the Supreme Court has never required a showing that an emergency situation existed, "the absence of an emergency may be probative of whether the force was indeed inflicted maliciously or sadistically." Jordan v. Gardner, 986 F.2d 1521, 1528 n.7 (9th Cir. 1993); see also Hope v. Pelzer, 536 U.S. 730, 738 (2002) (holding that cuffing an inmate to a hitching post for seven hours despite the clear lack of an emergency situation was a violation of the Eighth Amendment); Jeffers, 267 F.3d at 913, (deliberate indifference standard applies where there is no "ongoing prison security measure.")

Plaintiff fails to allege the surrounding circumstances sufficiently for the Court to determine (1) if the force was more than minimal, see e.g. Murray v. Goord, 668

F.Supp.2d 344, 361 (N.D.N.Y. 2009) (no excessive force where injuries suffered are de minimis and the force used not wanton or malicious), <u>Green v. Denning</u>, 465 Fed.Appx.804, 807 (10th Cir. 2012) (no excessive force where prisoner restrained and brought to the ground causing a cut, where prisoner refused a direct order), and (2) if the force was applied in good faith or in a sadistic and malicious manner, <u>see</u> <u>Manier v. Cook</u>, 394 F.Supp.2d 1282, 1288 (E.D. Wash. 2005), citing <u>Whitley</u>, 475 U.S. at 322 ("no Eighth Amendment violation if force was applied in a good-faith effort to maintain or restore discipline . . . [a]n allegation of cruel and unusual punishment should proceed to trial only if the evidence supports a reliable inference that prison official intended to inflict pain.")

Plaintiff has not stated a cognizable excessive force claim. He will be given leave to amend this claim. If Plaintiff chooses to amend he must set forth sufficient facts to support a claim of malicious and sadistic application of more force than necessary and more than de minimis force solely to cause harm.

2.   <u>Deliberate Indifference to Serious Medical Needs</u>

Plaintiff alleges Defendant Nurse Ballesteros, at the request of custody staff, failed to completely evaluate and record injuries caused by the March 30th application of force in deliberate indifference to his serious medical needs.

"[T]o maintain an Eighth Amendment claim based on prison medical treatment, an inmate must show 'deliberate indifference to serious medical needs.'" <u>Jett v. Penner</u>, 439 F.3d 1091, 1096 (9th Cir. 2006), quoting <u>Estelle v. Gamble</u>, 429 U.S. 97, 106 (1976). The two prong test for deliberate indifference requires a plaintiff to show (1) "'a serious medical need' by demonstrating that 'failure to treat a prisoner's condition could result in

further significant injury or the unnecessary and wanton infliction of pain,'" and (2) "the defendant's response to the need was deliberately indifferent." Jett, 439 F.3d at 1096, quoting McGuckin v. Smith, 974 F.2d 1050, 1059 (9th Cir. 1992). Deliberate indifference is shown by "a purposeful act or failure to respond to a prisoner's pain or possible medical need, and harm caused by the indifference." Jett, 439 F.3d at 1096, citing McGuckin, 974 F.2d at 1060. In order to state a claim for violation of the Eighth Amendment, a plaintiff must allege sufficient facts to support a claim that the named defendants "[knew] of and disregard[ed] an excessive risk to [plaintiff's] health . . . ." Farmer v. Brennan, 511 U.S. 825, 837 (1994).

A difference of opinion between medical professionals concerning the appropriate course of treatment generally does not amount to deliberate indifference to serious medical needs. Toguchi v. Chung, 391 F.3d 1051, 1058 (9th Cir. 2004); Sanchez v. Vild, 891 F.2d 240, 242 (9th Cir. 1989). Also, "a difference of opinion between a prisoner-patient and prison medical authorities regarding treatment does not give rise to a [§] 1983 claim." Franklin v. Oregon, 662 F.2d 1337, 1344 (9th Cir. 1981).

To establish that such a difference of opinion amounted to deliberate indifference, the prisoner "must show that the course of treatment the doctors chose was medically unacceptable under the circumstances" and "that they chose this course in conscious disregard of an excessive risk to [the prisoner's] health." See Jackson v. McIntosh, 90 F.3d 330, 332 (9th Cir. 1996); see also Wilhelm v. Rotman, ―― F .3d ――, 2012 WL 1889786 at *7 (9th Cir. May 25, 2012) (doctor's awareness of need for treatment followed by his unnecessary delay in implementing the prescribed treatment sufficient to plead deliberate indifference); see also Snow v. McDaniel, ―― F.3d. ――, 2012 WL 1889774

-10-

1
2
3

at *7 (9th Cir. May 25, 2012) (decision of non-treating, non-specialist physicians to repeatedly deny recommended surgical treatment may be medically unacceptable under all the circumstances).

4
5
6
7
8
9

Plaintiff alleges that he suffered an unspecified shoulder injury and minor scratches. There is nothing in that claim to suggest a serious medical need.[2] The nature and extent of the alleged shoulder injury is unclear; there is no suggestion the injury caused pain, that Plaintiff sought and received treatment, or that the injury limited his activities.

10
11
12
13
14
15

Even if Plaintiff had alleged a serious medical condition, he does not present facts suggesting Defendant Ballesteros failed to evaluate him for injuries, or denied, delayed, or interfered with medically necessary treatment. The Crime/Incident Report attached to the Complaint indicates Plaintiff was evaluated by Defendant Ballesteros and includes a description of his injuries and states that he was treated and released. (Compl. at 32-36.)

16
17
18
19
20
21
22
23

Plaintiff fails to allege facts plausibly claiming any deliberate denial, delay, or interference in addressing his medical needs and resulting harm. The Court will give Plaintiff  an opportunity to amend to correct the noted deficiencies. If Plaintiff chooses to amend he must set forth sufficient facts claiming in addition to a demonstrated serious medical need, a deliberately indifferent response to that need on the part of defendants causing harm to Plaintiff.

///////

24
25
26
27

[2] See McGuckin, 974 F.2d at 1059–60 ("[T]he existence of an injury that a reasonable doctor or patient would find important and worthy of comment or treatment; the presence of a medical condition that significantly affects an individual's daily activities; or the existence of chronic and substantial pain are examples of indications that a prisoner has a 'serious' need for medical treatment.")

1
2
3
4
5
6
7
8
9
10
11
12
13
14
15
16
17
18
19
20
21
22
23
24
25
26
27

## D.  **First Amendment**

### 1.  Retaliation

Plaintiff alleges the CSP Defendants retaliated for his filing of the 2009 excessive force lawsuit against Defendant Castillo by taking his legal documents, using force against him, being deliberately indifferent to his serious medical needs, and bringing false charges against him resulting in his being placed in segregated housing.

"Within the prison context, a viable claim of First Amendment retaliation entails five basic elements: (1) an assertion that a state actor took some adverse action against an inmate (2) because of (3) that inmate's protected conduct, and that such action (4) chilled the inmate's exercise of his First Amendment rights, and (5) the action did not reasonably advance a legitimate correctional goal." Rhodes v. Robinson, 408 F.3d 559, 567-68 (9th Cir. 2005).

To establish a prima facie case, plaintiff must allege and show that defendants acted to retaliate for his exercise of a protected activity, and that defendants' actions did not serve a legitimate penological purpose.  See Barnett v. Centoni, 31 F.3d 813, 816 (9th Cir. 1994); Pratt v. Rowland, 65 F.3d 802, 807 (9th Cir. 1995). Timing of the events surrounding the alleged retaliation may constitute circumstantial evidence of retaliatory intent.  See Pratt, 65 F.3d at 808; Soranno's Gasco, Inc. v. Morgan, 874 F.2d 1310, 1316 (9th Cir. 1989).

A plaintiff must show that his protected conduct was a "'substantial' or 'motivating' factor behind the defendant's conduct." Id., quoting Sorrano's Gasco, Inc., 874 F.2d at 1314. Although it can be difficult to establish the motive or intent of the defendant, a plaintiff may rely on circumstantial evidence. Bruce v. Ylst, 351 F.3d 1283, 1289 (9th Cir.

2003) (finding that a prisoner established a triable issue of fact regarding prison officials' retaliatory motives by raising issues of suspect timing, evidence, and statements). A plaintiff must also show defendant's actions would be sufficient to chill or silence a person of ordinary firmness from future First Amendment activities, Rhodes, 408 F.3d at 568-69), citing Mendocino Envtl. Ctr. v. Mendocino County, 192 F.3d 1283, 1300 (9th Cir. 1999), and did not advance legitimate goals of the correctional institution or was not tailored narrowly enough to achieve such goals. Rizzo v. Dawson, 778 F.2d 527, 532 (9th Cir. 1985).

Here Plaintiff fails to allege facts sufficient to claim that Defendants' actions did not reasonably advance a legitimate correctional goals relating to discipline or security. It appears, and he seems to concede, that the adverse actions alleged had their genesis in his March 30th disobedience of Defendant Castillo's order. "To prevail on a retaliation claim, a prisoner must show that the challenged action did not reasonably advance a legitimate correctional goal." Brodheim v. Cry, 584 F.3d 1262, 1271 (9th Cir. 2009), citing Rhodes, 408 F.3d at 568.

Plaintiff also fails to allege sufficient facts about the 2009 lawsuit for the Court to determine the existence of activity protected by the First Amendment.

Plaintiff has failed to allege sufficient facts to satisfy all five prongs of a retaliation claim. He will be given leave to amend this claim. If he chooses to do so, he must set forth facts sufficient to plausibly claim all of the above elements attributable to each Defendant.

///////

-13-

1

2.      Access to Courts

2

a.      Federal and State Defendants

3

Plaintiff alleges (1) Defendant Castillo took his legal documents, (2) Defendants

4

Castillo, Gonzales and Guzman denied and delayed law library services, and (3)

5

Defendant Deputy Attorney General Riches, counsel for Defendant Castillo, did not

6

7

respond to Plaintiff's request for copies of the legal documents taken from him so as to

8

interfere with his prosecution of the 2009 lawsuit and appeal from dismissal of it, in

9

violation of his right of access to court.

10

Inmates have a fundamental right of access to the courts. Lewis v. Casey, 518

11

U.S. 343, 346 (1996); Bounds v. Smith, 430 U.S. 817, 821 (1977), limited in part on other

12

grounds by Lewis, 518 U.S. at 354; Phillips v. Hust, 588 F.3d 652, 655 (9th Cir. 2009);

13

14

Ching v. Lewis, 895 F.2d 608, 609 (9th Cir. 1990) Courts have traditionally differentiated

15

between two types of access claims, those involving the right to affirmative assistance,

16

and those involving inmate's right to litigate without active interference. Silva v. Di Vittorio

17

658 F.3d 1090, 1102 (9th Cir. 2011).

18

The right to assistance is limited to direct criminal appeals, habeas petitions, and

19

civil rights actions. Id. at 354. This right "requires prison authorities to assist inmates in

20

21

the preparation and filing of meaningful legal papers by providing prisoners with adequate

22

law libraries or adequate assistance from persons trained in the law." Bounds, 430 U.S.

23

at 828; see also Phillips, 588 F.3d at 655; Madrid v. Gomez, 190 F.3d 990, 995 (9th Cir.

24

1999). The right to assistance is only a right to bring complaints to the federal court and

25

not a right to discover such claims or to litigate them effectively once filed with a court.

26

See Lewis, 518 U.S. at 354-55; Madrid, 190 F.3d at 995; Cornett v. Donovan, 51 F.3d

27

-14-

894, 898 (9th Cir. 1995) ("[W]e conclude the Supreme Court has clearly stated that the constitutional right of access requires a state to provide a law library or legal assistance only during the pleading stage of a habeas or civil rights action.")

The right to litigate without interference applies to pursuit of legal redress for claims that have a reasonable basis in law or facts. Silva, 658 F.3d at 1103.

Claims for denial of access to the courts may arise from the frustration or hindrance of "a litigating opportunity yet to be gained" (forward-looking access claim) or from the loss of a meritorious suit that can not now be tried (backward-looking claim). Christopher v. Harbury, 536 U.S. 403, 412-415 (2002). The plaintiff must show: 1) the loss of a 'nonfrivolous' or 'arguable' underlying claim; 2) the official acts frustrating the litigation; and 3) a remedy that may be awarded as recompense but that is not otherwise available in a future suit. Id. at 413-14.

To establish a violation of the right of access to the courts, a prisoner must establish that he or she has suffered an actual injury, a jurisdictional requirement that flows from the standing doctrine and may not be waived. See Lewis, 518 U.S. at 349. An "actual injury" is "actual prejudice with respect to contemplated or existing litigation, such as the inability to meet a filing deadline or to present a claim." Lewis, 518 U.S. at 348. Delays in providing legal materials or assistance that result in actual injury are "not of constitutional significance" if "they are the product of prison regulations reasonably related to legitimate penological interests." Lewis, 518 U.S. at 362.

Here Plaintiff fails to allege facts sufficient to demonstrate a claim for denial of access to courts under the above standards. He fails to sufficiently describe the 2009 lawsuit and show the claims in that suit were nonfrivolous or arguable and subject to final

disposition.[3] He fails to describe the legal documents taken and the library services denied or delayed and how such acts caused him actual injury by foreclosing relief. He fails to allege facts suggesting that Defendants' actions were other than supported by a penological purpose. He fails to allege any duty on the part of Defendant Deputy Attorney General Riches to provide the documents taken by Defendant Castillo.

Plaintiff has not stated a claim for denial of access to the courts as against these Defendants. He will be given leave to amend this claim. If he chooses to amend, he must set forth sufficient facts plausibly claiming the above noted elements attributable to each Defendant.

b.    Kings County Defendants

Plaintiff alleges that Kings County Defendants Matteson, Lewis, and Barton failed to provide him with a conformed copy of his proferred state tort complaint, denying him access to court.

This claim is similarly defective. It fails to sufficiently allege the predicate lawsuit, nonfrivolous or arguable claim(s) asserted therein, and that the alleged actions of these Defendants foreclosed relief. It appears his state court complaint was rejected due to filing discrepancies. (Compl. at 13.)

Plaintiff has not stated a claim for denial of access to the courts as against these Defendants. He will be given leave to amend this claim. If he chooses to amend, he must set forth sufficient facts plausibly claiming the above noted elements and attributing them

---

[3] See Christopher, 536 U.S. at 415, 417 (noting that a backward-looking denial of access complaint "should state the underlying claim in accordance with Federal Rule of Civil Procedure 8(a), just as if it were being independently pursued."); see also Avalos v. Baca, 596 F.3d 583, 591 n.8 (9th Cir. 2010).

1
2

to each Defendant.

### E.   **Fourteenth Amendment - Due Process**

Plaintiff alleges his due process rights were violated when Defendants' took his

legal documents and placed him in Ad-Seg.

1.    Deprivation of Property

The Due Process Clause protects prisoners from being deprived of property

without due process of law. Wolff v. McDonnell, 418 U.S. 539, 556 (1974). Prisoners

have a protected interest in their personal property. Hansen v. May, 502 F.2d 728, 730

(9th Cir. 1974).

An authorized, intentional deprivation of property may be actionable under the Due

Process Clause. Hudson v. Palmer, 468 U.S. 517, 532, n.13 (1984) (citing Logan v.

Zimmerman Brush Co., 455 U.S. 422, 435-436 (1982)); see also Quick v. Jones, 754

F.2d 1521, 1524 (9th Cir. 1985).[4] Authorized deprivations of property are not actionable if

carried out pursuant to a regulation that is reasonably related to a legitimate penological

interest. Turner v. Safley, 482 U.S. 78, 89 (1987).

Neither negligent nor unauthorized intentional deprivations of property by a

governmental employee "constitute a violation of the procedural requirements of the Due

Process Clause of the Fourteenth Amendment if a meaningful post deprivation remedy

for the loss is available". Hudson, 468 U.S. at 533. There is an adequate post-deprivation

remedy under California law and therefore, an attempt to pursue a claim under federal

---

[4] An authorized deprivation is one carried out pursuant to established state procedures,
regulations, or statutes. Logan, 455 U.S. at 436; Piatt v. McDougall, 773 F.2d 1032, 1036 (9th Cir. 1985);
see also Knudson v. City of Ellensburg, 832 F.2d 1142, 1149 (9th Cir. 1987).

1
2
3

law for the unauthorized or negligent deprivation of property fails as a matter of law. Barnett v. Centoni, 31 F.3d 813, 816-17 (9th Cir. 1994) (citing Cal. Gov't Code §§ 810-895).

4
5
6
7
8
9

Here Plaintiff appears to allege a negligent or unauthorized taking of his property. The Court will allow leave to amend. If Plaintiff chooses to amend, he must set forth sufficient facts plausibly claiming an authorized confiscation not reasonably related to a legitimate penological interest, or a valid state tort claim relating to an unauthorized or negligent deprivation subject to supplemental jurisdiction.

10

    2.    Administrative Segregation (Ad-Seg)

11
12

Plaintiff alleges that his due process rights under the Fourteenth Amendment were violated because he was placed in Ad–Seg based upon false charges.

13
14
15
16
17
18
19
20
21

In order to state a cause of action for deprivation of procedural due process, a plaintiff must first establish the existence of a liberty interest for which the protection is sought.  Liberty interests may arise from the Due Process Clause itself or from state law. Hewitt v. Helms, 459 U.S. 460, 466-68 (1983), abrogated in part on other grounds, Sandin v. Conner, 515 U.S. 472, 481-84 (1995). The Due Process Clause itself does not confer on inmates a liberty interest in being confined in the general prison population instead of administrative segregation.  Hewitt, 459 U.S. at 466-68.

22
23
24
25
26
27

With respect to liberty interests arising from state law, the existence of a liberty interest created by prison regulations is determined by focusing on the nature of the deprivation.  Sandin, 515 U.S. at 481-84. Liberty interests created by prison regulations are limited to freedom from restraint which "imposes atypical and significant hardship on the inmate in relation to the ordinary incidents of prison life." Id. at 484.

-18-

Plaintiff has alleged no facts that establish the existence of a liberty interest in remaining free from Ad-Seg. Id.; see also May v. Baldwin, 109 F.3d 557, 565 (9th Cir. 1997) (convicted inmate's due process claim fails because he has no liberty interest in freedom from state action taken within sentence imposed and administrative segregation falls within the terms of confinement ordinarily contemplated by a sentence).

Plaintiff may not pursue a claim for relief under § 1983 for deprivation of procedural due process because he has not established the existence of a liberty interest in remaining free from Ad-Seg. Further, even if plaintiff had a liberty interest in remaining free from Ad-Seg, plaintiff has alleged no facts that support his claim he was deprived of the procedural due process protections he was due.  When a prisoner is placed in Ad–Seg, prison officials must, within a reasonable time, conduct an informal, non-adversary review of the evidence justifying the decision to segregate the prisoner. Hewitt, 459 U.S. at 476, abrogated in part on other grounds, Sandin, 515 U.S. at 472. Before review, the prisoner must receive some notice of the charges and be given an opportunity to respond. See Hewitt, 459 U.S. at 476.

Plaintiff fails to allege facts demonstrating he was denied any process due under the above standards, relating to Ad-Seg. The Court will allow leave to amend. If he chooses to do so, he must set forth facts sufficient to plausibly claim under the above standards.

F.    Conspiracy

Plaintiff alleges the federal and state Defendants have conspired in the above rights deprivations.

To state a claim for conspiracy under § 1983, Plaintiff must show the existence of

an agreement or a meeting of the minds to violate his constitutional rights, and an actual deprivation of those constitutional rights. Avalos v. Baca, 596 F.3d 583, 592 (9th Cir. 2010); Franklin v. Fox, 312 F.3d 423, 441 (9th Cir. 2001). Conspiracy under § 1983 merely provides a mechanism by which to plead or prove a constitutional or statutory violation. Landrigan v. City of Warwick, 628 F.2d 736, 742 (1st Cir. 1980). A pro se complaint containing only conclusory, vague, or general allegations of conspiracy to deprive a person of constitutional rights will not withstand a motion to dismiss. Zemsky v. City of New York, 821 F.2d 148, 151-52 (2nd Cir. 1987).

Plaintiff fails to allege facts plausibly claiming an agreement among Defendants to deprive Plaintiff of his federal rights. Mere conclusions and surmise are insufficient to support this claim. He also fails to allege any predicate federal rights deprivation for the reasons stated above.

If Plaintiff chooses to amend, he must set forth sufficient facts showing all of the above noted elements attributable to each of the Defendants.

## V.   CONCLUSION AND ORDER

Plaintiff's Complaint does not state a claim for relief under § 1983. The Court will grant Plaintiff an opportunity to file an amended complaint. Lopez v. Smith, 203 F.3d 1122, 1130 (9th Cir. 2000); Noll v. Carlson, 809 F.2d 1446, 1448-49 (9th Cir. 1987).

If Plaintiff opts to amend, he must demonstrate that the alleged acts resulted in a deprivation of his constitutional rights. Iqbal, 556 U.S. at 667-68. He must set forth "sufficient factual matter . . . to 'state a claim that is plausible on its face.'" Id. at 678 (quoting Twombly, 550 U.S. at 555). He must also demonstrate that each named Defendant personally participated in a deprivation of his rights under color of state law.

-20-

Jones, 297 F.3d at 934.

Plaintiff should note that although he has been given the opportunity to amend, it is not for the purposes of adding new claims. George v. Smith, 507 F.3d 605, 607 (7th Cir. 2007). Plaintiff should carefully read this screening order and focus his efforts on curing the deficiencies set forth above.

Finally, Plaintiff is advised that Local Rule 220 requires that an amended complaint be complete in itself without reference to any prior pleading. As a general rule, an amended complaint supersedes the original complaint. See Loux v. Rhay, 375 F.2d 55, 57 (9th Cir. 1967). Once an amended complaint is filed, the original complaint no longer serves any function in the case. Therefore, in an amended complaint, as in an original complaint, each claim and the involvement of each defendant must be sufficiently alleged. The amended complaint should be clearly and boldly titled "First Amended Complaint", refer to the appropriate case number, and be an original signed under penalty of perjury. Plaintiff's amended complaint should be brief. Fed. R. Civ. P. 8(a). Although accepted as true, the "[f]actual allegations must be [sufficient] to raise a right to relief above the speculative level . . . ." Twombly, 550 U.S. at 555.

Based on the foregoing, it is **HEREBY ORDERED** that:

The Clerk's Office shall send Plaintiff (1) a blank civil rights amended complaint form and (2) a copy of his Complaint filed April 24, 2012,

Plaintiff's Complaint is dismissed for failure to state a claim upon which relief may be granted,

Plaintiff shall file an amended complaint within thirty (30) days from service of this order, and

-21-

1
2
3
4

If Plaintiff fails to file an amended complaint in compliance with this order, it is recommended that this action be dismissed, with prejudice, for failure to state a claim and failure to prosecute, subject to the "three strikes" provision set forth in 28 U.S.C. § 1915(g). Silva, 658 F.3d 1090 (9th Cir. 2011).

5
6
7
8
9

IT IS SO ORDERED.

10
11

Dated:    August 30, 2012              /s/ Michael J. Seng
                                UNITED STATES MAGISTRATE JUDGE

12
13
14
15
16
17
18
19
20
21
22
23
24
25
26
27